**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

THOMAS MATTHEWS, on behalf of
Himself and all others similarly situated,

Case No. 0:22-cv-61229-CMA

        Plaintiff,

    v.

ENHANCE HEALTH, LLC,

        Defendant.

_____

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED PUTATIVE CLASS ACTON COMPLAINT
<u>OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

I.     The FTSA ................................................................................................................. 2

II.    Plaintiff's Relevant Allegations ............................................................................. 3

APPLICABLE LEGAL STANDARD ................................................................................ 3

ARGUMENT ....................................................................................................................... 4

I.     Count I of the FAC Must Be Dismissed With Prejudice Because Section 8(a) of the FTSA is Facially Unconstitutional For Multiple Reasons .......................................... 4

     a.    Section 8(a) of the FTSA violates the free speech protections of the First Amendment ........................................................................................................ 4

          i.    Section 8(a) employs a content-based restriction of speech and therefore is subject to strict scrutiny review ................................................. 4

          ii.    Section 8(a)'s content-based speech restrictions fails 'strict scrutiny' review ................................................................................................. 6

          iii.   Section 8(a) also does not survive 'intermediate scrutiny' review ........... 8

     b.    Section 8(a) of the FTSA is also unconstitutionally vague and violates due process .............................................................................................................. 9

     c.    The FTSA violates the Dormant Commerce Clause ............................................ 10

     d.    This case fails even under Judge Ruiz's recent decision in Turizo ..................... 12

II.    Counts I and II Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim for Relief under the FTSA or TCPA ......................................................... 14

     a.    The FAC fails to state a viable FTSA claim because Plaintiff is not a Florida resident .............................................................................................. 14

     b.    The FAC fails to state a viable TCPA claim for several reasons......................... 14

          i.    Plaintiff fails to allege facts suggesting that his phone number is actually used for "residential" purposes as required to state a TCPA DNC claim ................................................................................... 14

          ii.    Plaintiff fails to allege that he received more than one call by or on behalf of Enhance in a 12-month period as required to bring a DNC claim ...................................................................................................... 15

          iii.   The FAC implies direct and vicarious liability but fails to allege sufficient facts to support a claim under either theory under the TCPA or FTSA ..................................................................................... 16

          iv.   Plaintiff does not include any facts supporting trebling of damages ....... 20

# TABLE OF CONTENTS
(continued)

**Page**

III.   The FAC Should Also Be Dismissed Under Rule 12(b)(1) For Lack of Federal Subject Matter Jurisdiction Because Plaintiff Lacks Article III Standing ...................... 20

IV.   Alternatively, Plaintiff's Proposed Class is Facially Uncertifiable as Pleaded and, Therefore, His Class Claims Should Be Stricken under Rules 12(f) and 23 .................. 21

    a.   Common questions of law and fact do not predominate for either putative class ....................................................................................................................... 22

    b.   Plaintiff's proposed classes are impermissibly fail-safe ..................................... 23

    c.   Both proposed classes are impermissibly broad .................................................. 24

V.   CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*,
2018 WL 488257 (N.D. Ill. Jan. 18, 2018).........................................................22, 25

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
2018 WL 288055 (N.D. Cal. Jan. 4, 2018)...........................................................16, 18

*Abramson v. 1 Glob. Capital, LLC*,
2015 WL 12564318 (S.D. Fla. Sept. 23, 2015) .....................................................19, 20

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*,
131 S.Ct. 2806 (2011)..............................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................3

*Atkinson v. Wal-Mart Stores, Inc.*,
2009 WL 1458020 (M.D. Fla. May 26, 2009).........................................................21

*Bacon v. Stiefel Lab'ys, Inc.*,
275 F.R.D. 681 (S.D. Fla. 2011)..............................................................................22

*Baisden v. Credit Adjusts., Inc.*,
813 F.3d 338 (6th Cir. 2016) ...................................................................................23

*Balassiano v. Fogo De Chao Churrascaria (Orlando) LLC*,
2020 WL 7365264 (M.D. Fla. Dec. 15, 2020), *report and rec. adopted*, 2021 WL
2019722 (Jan. 7, 2021) ............................................................................................24

*Balthazor v. Cent. Credit Servs., Inc.*,
2012 WL 6725872 (S.D. Fla. Dec. 27, 2012) .........................................................22

*Bank v. Philips Elecs. N. Am. Corp.*,
2015 WL 1650926 (E.D.N.Y. Apr. 14, 2015) .......................................................18

*Barker v. Sunrun Inc.*,
2019 WL 1983291 (D.N.M. Apr. 29, 2019) ...........................................................21

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
140 S.Ct. 2335 (2020)..................................................................................4, 5, 6, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................3

*Bonavista Condo. Ass'n, Inc. v. Bystrom*,
520 So. 2d 84 (Fla. 3d DCA 1988) ..........................................................................9

*Booth v. Appstack, Inc.*,
2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ...................................................12

*Bryant v. King's Creek Plantation, L.L.C.*,
2020 WL 6876292 (E.D. Va. June 22, 2020) .........................................................24

**TABLE OF AUTHORITIES**
(continued)

Page

*Cahaly v. Larosa,*
   796 F.3d 399 (4th Cir. 2015) ........................................................................5, 6, 8

*Canary v. Youngevity Int'l, Inc.,*
   2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) ........................................................20

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
   447 U.S. 557 (1980) ......................................................................................8, 13

*Chaparro v. Carnival Corp.,*
   693 F.3d 1333 (11th Cir. 2012) ..........................................................................4

*Cherry v. F.C.C.,*
   2009 WL 4668405 (M.D. Fla. Dec. 3, 2009) .........................................................20

*Childress v. Liberty Mut. Ins. Co.,*
   2018 WL 4684209 (D.N.M. Sept. 28, 2018) .........................................................18

*Cholly v. Uptain Grp., Inc.,*
   2017 WL 449176 (N.D. Ill. Feb. 1, 2017) .............................................................22

*Citizens United v. Fed. Election Comm'n,*
   558 U.S. 310 (2010) .........................................................................................6

*City Council of L.A. v. Taxpayers for Vincent,*
   466 U.S. 789 (1984) .........................................................................................7

*Cordoba v. DIRECTV, LLC,*
   942 F.3d 1259 (11th Cir. 2019) ........................................................................25

*Cunningham v. Politi,*
   2019 WL 2517085 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,* 2019 WL
   2524737 (June 19, 2019) ..................................................................................15

*Cunningham v. Rapid Capital Funding, LLC/RCF,*
   2017 WL 3574451 (M.D. Tenn. July 27, 2017), *report and rec. adopted,* 2017 WL
   3776165 (Aug. 31, 2017) ..................................................................................15

*Cunningham v. Sunshine Consulting Grp., LLC,*
   2018 WL 3496538 (M.D. Tenn. July 20, 2018), *report and rec. adopted,* 2018 WL
   5728534 (Aug. 7, 2018)....................................................................................14

*Davila v. Delta Air Lines, Inc.,*
   326 F.3d 1183 (11th Cir. 2003) ..........................................................................4

*Donaca v. Dish Network, LLC,*
   303 F.R.D. 390 (D. Colo. 2014) ........................................................................16

*Dorfman v. Albertson's LLC,*
   2020 WL 86192 (D. Idaho Jan. 7, 2020) .............................................................23

*Edgar v. MITE Corp.,*
   457 U.S. 624 (1982).........................................................................................10

# TABLE OF AUTHORITIES
(continued)

**Page**

*Eldridge v. Cabela's Inc.*,
2017 WL 4364205 (W.D. Ky. Sept. 29, 2017) ....................................................................22

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) ..............................................................................................................9

*Fennell v. Navient Sols., LLC*,
2019 WL 3854815 (M.D. Fla. June 14, 2019) ....................................................................24

*FF Cosms. FL, Inc. v. City of Miami Beach*,
866 F.3d 1290 (11th Cir. 2017) .............................................................................................8

*Fla. Transp. Servs., Inc. v. Miami-Dade Cty.*,
703 F.3d 1230 (11th Cir. 2012) ..........................................................................................10

*Flores v. City of California City*,
2019 WL 1934016 (E.D. Cal. May 1, 2019) .......................................................................25

*Foxx v. Ocwen Loan Servicing, LLC*,
2012 WL 2048252 (M.D. Fla. June 6, 2012) ......................................................................22

*Frank v. Cannabis & Glass, LLC*,
2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ....................................................................17

*Freidman v. Massage Envy Franchising, LCC*,
2013 WL 3026641 (S.D. Cal. June 13, 2013) .....................................................................21

*Frisby v. Shultz*,
487 U.S. 474 (1988) ..............................................................................................................7

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ............................................................................................................21

*GeorgiaCarry.Org, Inc. v. Georgia*,
687 F.3d 1244 (11th Cir. 2012) (abrogated on other grounds *by New York State Rifle
& Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)) ........................................................3

*Grant v. Regal Auto. Grp., Inc.*,
2020 WL 8254283 (M.D. Fla. July 30, 2020), *report and rec. adopted*, 2020 WL
8224838 (Sept. 29, 2020) .....................................................................................................16

*Green v. United States*,
700 F. Supp. 2d 1280 (M.D. Fla. 2010), *aff'd*, 418 F.App'x 862 (11th Cir. 2011) .............19

*Gresham v. Rutledge*,
198 F. Supp. 3d 965 (E.D. Ark. 2016) ..............................................................................6, 8

*Hale v. Teledoc Health, Inc.*,
2021 WL 1163925 (S.D.N.Y. Mar. 25, 2021) ....................................................................19

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................................22

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Harris v. Mex. Specialty Foods, Inc.*,
564 F.3d 1301 (11th Cir. 2009) .......................................................................................4

*Healy v. Beer Inst., Inc.*,
491 U.S. 324 (1989)..........................................................................................10, 11, 13

*Henley v. Turner Broad. Sys., Inc.*,
267 F. Supp. 3d 1341 (N.D. Ga. 2017) ..........................................................................20

*Hicks v. Alarm.com*,
2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ..............................................................15, 21

*Hirsch v. Lyndon S. Ins. Co.*,
2019 WL 5110622 (M.D. Fla. June 7, 2019), *report and rec. adopted sub nom.*, 2019
WL 8370863 (Aug. 6, 2019), *aff'd*, 805 F.App'x 987 (11th Cir. 2020).....................17, 19, 20

*In re Dish Network, LLC*,
2013 WL 1934349, 28 FCC Rcd. 6574 (2013)..............................................................16, 17

*Int'l Outdoor, Inc. v. City of Troy*,
974 F.3d 690 (6th Cir. 2020) ..........................................................................................13

*Jackson v. Motel 6 Multipurpose, Inc.*,
130 F.3d 999 (11th Cir. 1997) ........................................................................................22

*Jamison v. First Credit Servs., Inc.*,
290 F.R.D. 92 (N.D. Ill. 2013).................................................................................12, 25

*Johnson v. United States*,
576 U.S. 591 (2015).........................................................................................................9

*Landy v. Nat. Power Sources, LLC*,
2021 WL 3634162 (D.N.J. Aug. 17, 2021) ..............................................................18, 19

*Lawson v. Life of the S. Ins. Co.*,
286 F.R.D. 689 (M.D. Ga. 2012) .................................................................................21, 22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ......................................................................................................20

*Licari Family Chiropractic v. eClinical Works, LLC*,
2019 WL 7423551 (M.D. Fla. Feb. 16, 2018) ...............................................................25

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
2013 WL 275568 (E.D. Mo. Jan. 24, 2013) .............................................................22, 23

*Linlor v. Five9, Inc.*,
2017 WL 5885671 (S.D. Cal. Nov. 29, 2017) ...............................................................19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ......................................................................................................20

*Maldonado-Rodriguez v. Citibank, N.A.*,
2013 WL 350814 (N.D. Ind. Jan. 28, 2013) .................................................................18

# TABLE OF AUTHORITIES
(continued)

Page

*Martinolich v. Golden Leaf Mgmt., Inc.*,
786 So. 2d 613 (Fla. 3d DCA 2001) ....................................................................17

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) .........................................................19

*MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*,
755 F. Supp. 2d 1205 (M.D. Fla. 2010) ..................................................................22

*Naiman v. Freedom Forever, LLC*,
2019 WL 1790471 (N.D. Cal. Apr. 24, 2019) .........................................................16

*New Concept Dental v. Dental Res. Sys., Inc.*,
2020 WL 3303064 (S.D. Fla. Mar. 3, 2020) ...........................................................22

*Newhart v. Quicken Loans Inc.*,
2016 WL 7118998 (S.D. Fla. Oct. 12, 2016) ..........................................................22

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ................................................................................................21

*Pariseau v. Built USA LLC*,
2022 WL 3139243 (M.D. Fla. Aug. 5, 2022) ......................................................1, 14

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) .........................................................16

*Pepka v. Kohl's Dep't Stores, Inc.*,
2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) .........................................................22

*Police Dept. of Chicago v. Mosley*,
408 U.S. 92 (1972) ....................................................................................................4

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155 (2015) .......................................................................................... passim

*Rogers v. Postmates Inc.*,
2020 WL 3869191 (N.D. Cal. July 9, 2020) ...........................................................16

*Sauter v. CVS Pharmacy, Inc.*,
2014 WL 1814076 (S.D. Ohio May 7, 2014) ..........................................................22

*Schaevitz v. Braman Hyundai, Inc.*,
437 F. Supp. 3d 1237 (S.D. Fla. 2019) ...................................................................21

*Scruggs v. CHW Grp., Inc.*,
2020 WL 9348208 (E.D. Va. Nov. 12, 2020) ..........................................................18

*Sheski v. Shopify (USA) Inc.*,
2020 WL 2474421 (N.D. Cal. May 13, 2020) ..........................................16, 17, 19

*Simon v. Eastern Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ..................................................................................................20

## TABLE OF AUTHORITIES
(continued)

Page

*Smith v. Direct Building Supplies, LLC*,
    2021 WL 4623275 (E.D. Pa. Oct. 7, 2021)................................................................17

*SpoofCard, LLC v. Burgum*,
    499 F. Supp. 3d 647 (D.N.D. 2020)........................................................................11

*TelTech Sys., Inc. v. McCollum*,
    2009 WL 10626585 (S.D. Fla. July 16, 2009)..........................................10, 11, 12

*The Dream Defenders v. DeSantis*,
    2021 WL 4099437 (N.D. Fla. Sept. 9, 2021)............................................................10

*Thomas v. Taco Bell Corp.*,
    582 F.App'x 678 (9th Cir. 2014) ..............................................................................16

*Tillman v. Ally Fin. Inc.*,
    2017 WL 7194275 (M.D. Fla. Sept. 29, 2017) .........................................................22

*Turizo v. Subway Franchisee Advertising Fund Trust Ltd.*,
    2022 WL 2919260 (S.D. Fla. May 18, 2022) ........................................1, 12, 13, 14

*Walewski v. Zenimax Media, Inc.*,
    502 F.App'x 857 (11th Cir. 2012) (*per curiam*)......................................................24

## STATUTES

815 ILCS 305/5(a) ..............................................................................................................10

47 U.S.C. § 227(b)(1) ...........................................................................................................4

47 U.S.C. § 227(b)(1)(A)(iii)................................................................................................7

Florida Telephone Solicitation Act, Fla. Stat. § 501.059.............................................. passim

N.Y. Gen. Bus. Law § 399-p(a) .........................................................................................10

Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5) ............................................ passim

Wash. Rev. Code § 80.36.400(1)(a) ....................................................................................10

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(c)(2).................................................................................14, 23, 25

47 C.F.R. § 64.1200(f)(5)....................................................................................................23

47 C.F.R. § 64.1200(f)(9)......................................................................................................8

47 C.F.R. § 64.1200(f)(15)..................................................................................................25

Fla. House Bill, https://www.flsenate.gov/Session/Bill/2022/1095/BillText/c1/PDF ................10

Fla. Senate Bill, https://www.flsenate.gov/Session/Bill/2022/1095/BillText/c3/PDF ................10

Florida Constitution, Article I, Section 9 ..............................................................................9

Florida Senate Bill Analysis and Fiscal Impact Statement for CS/SB 1120 at 2, available at
    https://www.flsenate.gov/Session/Bill/2021/1120/Analyses/2021s01120.rc.PDF ...........7, 9, 12

## TABLE OF AUTHORITIES
(continued)

**Page**

Restatement (Third) Agency § 1.01 ............................................................19

U.S. Const. ............................................................................................ passim

Wright & Miller, FEDERAL PRAC. & PROC. § 1760 (3d ed. 2005) ................24

## RULES

Fed. R. Civ. P. 12(b)(1)..................................................................2, 20, 21

Fed. R. Civ. P. 12(b)(6)........................................................................ passim

Fed. R. Civ. P. 12(f) .............................................................................2, 21

Fed. R. Civ. P. 23 ..........................................................................21, 22, 23

## INTRODUCTION

This case is merely another example of an opportunistic plaintiff seeking to foist nationwide class-based liability on a defendant where none exists, based on nothing more than speculative and conclusory allegations and not actual facts. Indeed, Plaintiff's First Amended Complaint (Dkt. 16, "FAC"), like its fatally-flawed predecessor, attempts to assert two narrow statutory violations against Defendant Enhance Health, LLC ("Enhance") for allegedly: (1) making a "telephonic sales call" using an "automated system" in violation of the recently-amended Florida Telephone Solicitation Act, Fla. Stat. § 501.059(8)(a) (the "FTSA"); and (2) making calls to phone numbers on the National Do Not Call ("DNC") Registry in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5) (the "TCPA"). Ultimately, however, Plaintiff's FAC fails to state a viable claim under either statute, let alone come even close to meeting basic federal pleadings standards.

As a threshold matter, Plaintiff's FTSA claim fails in Count I because it is still based on a statute that is facially unconstitutional under the First, Fifth and Fourth Amendments and the Dormant Commerce Clause of the United States Constitution and Florida's equivalent speech and due process protections, for myriad reasons discussed below. While one judge in this District (the Honorable Rodolfo A. Ruiz II) has held the FTSA to be constitutional in certain circumstances, he hinged his finding of constitutionality, in part, on the fact that "by the statute's own terms, the autodialer provision does not extend to calls to non-Florida residents or persons outside the state." *Turizo v. Subway Franchisee Advertising Fund Trust Ltd.*, 2022 WL 2919260, at *8 (S.D. Fla. May 18, 2022) (citing Fla. Stat. § 501.059(8)(d)). While Enhance's position is (respectfully) that *Turizo* was wrongly decided for several reasons and thus should not be blindly followed in this case,[1] Plaintiff is seeking to extend application of the FTSA far beyond Florida's borders. That is because Plaintiff readily admits, both in the FAC as well as in the Civil Cover Sheet filed with his original complaint, that he has a Virginia (540) area code and resides "Out of State" and not Florida. Dkt. 1-1. Thus, while Plaintiff's FTSA claim is without merit because the statute is unconstitutional and it lacks factual support, the Court need not even reach those issues based on a plain reading of the statute. For these and other reasons outlined below, Count I must be dismissed with prejudice.

Plaintiff's TCPA claim in Count II fares no better. Indeed, like its predecessor, Plaintiff's

---

[1] Enhance anticipates that, in response to this Motion, Plaintiff will cite *Turizo* and another non-binding decision upholding the constitutionality of the FTSA, *Pariseau v. Built USA LLC,* 2022 WL 3139243 (M.D. Fla. Aug. 5, 2022), which also relies heavily (if not exclusively) on *Turizo*.

FAC straddles the line of direct and vicarious liability by **_still conceding that someone else called him_**, not Enhance itself. However, merely alleging that a defendant was somehow involved in a call—such as a call being transferred to the defendant by the initial caller, as Plaintiff alleges—is not enough to state a TCPA (or FTSA) claim under either theory of liability. Had Plaintiff had a good faith basis for claiming Enhance could be held vicariously liable, he could have pled facts supporting an agency theory in his FAC, but instead he double-downed on his conclusory and unsubstantiated allegations. This is insufficient to state **_any_** claim in federal court or survive dismissal under Rule 12(b)(6) under the weight of applicable authority. This Court should rule similarly here.

Moreover, Plaintiff fails to plead facts supporting at least two of the three elements required for Article III standing (*i.e.,* traceability and redressability) for either of his claims. Thus, Counts I and II are also subject to dismissal under Rule 12(b)(1) for lack of federal subject matter jurisdiction.

Finally, while the entire FAC should be dismissed with prejudice for the myriad reasons above, to the extent any claims survive, the facially-uncertifiable class allegations should be stricken under Rules 12(f) and 23 because common questions of law and fact do not predominate for either putative class, and the putative classes are impermissibly fail-safe and overbroad.

## **BACKGROUND**

### I.  **The FTSA**

On June 28, 2021, Florida Senate Bill 1120, which amended the FTSA to add various new requirements relating to the use of an "automated system" to make "telephonic sales calls" to consumers, was presented to the Governor, who signed it into law on June 29, 2021. On July 1, 2021, the amendments took effect, providing in part as follows:

> (8)(a) A person may not **_make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers_** or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.

> (10)(a) A called party who is aggrieved by a violation of this section may bring an action to: 1. Enjoin such violation. 2. Recover actual damages or $500, whichever is greater.

> (b) If the court finds that the defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a).

Fla. Stat. § 501.059 (emphasis added).

The phrase "telephonic sales call" is broadly defined as "a telephone call, text message, or

2

voicemail transmission to a ***consumer*** for the purpose of soliciting a sale of any ***consumer*** goods or services, soliciting an extension of credit for ***consumer*** goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of ***consumer*** goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j) (emphasis added). Critically, the statute does <u>not</u> define "an automated system for the selection or dialing of telephone numbers."

## II.    <u>Plaintiff's Relevant Allegations</u>

Like its predecessor, the FAC is long on conclusions and short on actual facts. Instead, the FAC primarily consists of a diatribe about why telemarketing is generally bad (*see* pp. 1-2) and an overview of the law (*see* pp. 3-4), and it then concludes with general conclusory allegations that have nothing to do with Plaintiff or Enhance (*see* pp. 6-11). In any event, as to Plaintiff's few remotely "factual" allegations, it is notable that he originally alleged in his initial Complaint that he was called by someone other than Enhance—*i.e.,* an entity called "Medicare Supplemental." Dkt. 1, ¶ 29. Thus, the only allegation regarding Enhance in the original Complaint is that **one** of the calls at issue is alleged to have been ***transferred to someone else*** who was alleged to be somehow affiliated with Enhance. *Id.,* ¶¶ 28-30. Without including <u>any</u> additional facts, the FAC now merely claims in a wholly conclusory fashion that the at-issue calls made were "from Enhance Health" and that Plaintiff "believe[s]" that "Medicare Supplemental" is a "fake company name." *See, e.g.*, Dkt. 16, ¶¶ 24, 30. But Plaintiff provides no factual support for this purported "belief," however. Further, the FAC, like its predecessor, is devoid of a single allegation that Enhance physically initiated any call or that it had a common law agency relationship with or control over anyone making the alleged calls.

The FAC also relies exclusively on a Virginia (540) area code. Dkt. 16, ¶ 19. While the FAC is silent as to Plaintiff's state of residence (it merely refers to him as "an individual citizen," *id.* at 16, ¶ 6), his Civil Cover Sheet lists his residence as being "Out of State" and <u>not</u> Florida. Dkt. 1-1.

## APPLICABLE LEGAL STANDARD

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently plead a claim for relief. A "bare assertion" and "conclusory allegation[s]" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, Plaintiff must "include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) (abrogated on other grounds *by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)). "Conclusory allegations, unwarranted

factual deductions or legal conclusions masquerading as facts will not prevent dismissal" under Rule 12(b)(6). *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003); *see also Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."). Where (as here) a statute upon which a claim is based is unconstitutional, dismissal under Rule 12(b)(6) is also appropriate. *See Harris v. Mex. Specialty Foods, Inc.,* 564 F.3d 1301, 1308 (11th Cir. 2009).

## ARGUMENT

I. **Count I of the FAC Must Be Dismissed With Prejudice Because Section 8(a) of the FTSA is Facially Unconstitutional For Multiple Reasons**.

   a. Section 8(a) of the FTSA violates the free speech protections of the First Amendment.

      i. *Section 8(a) employs a content-based restriction of speech and therefore is subject to strict scrutiny review*.

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). The government generally "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S.Ct. 2335, 2346 (2020) (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). A statute is considered "content-based" where "a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163. This includes a statute that "singles out specific subject matter for differential treatment." *Id*. at 169. For example, "a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed." *Id*.

The United States Supreme Court has already made clear that restrictions on telemarketing which discriminate based on the call's content puts those restrictions at risk of being unconstitutional. In *Barr*, the Supreme Court held that the government-backed debt exception to the "automatic telephone dialing system" restrictions of the TCPA,[2] which permitted automated calls to collect a government debt without consent, where such calls would otherwise be unlawful under the statute, was an unconstitutional content-based restriction on free speech that was not narrowly tailored to serve a compelling interest. 140 S.Ct. at 2346-47. The Supreme Court found that a rule that differentiates between calls based on whether the call's content is to collect a government debt "is

[2] *See* 47 U.S.C. § 227(b)(1).

4

about as content-based as it gets." *Id.*

Applying these core concepts here, Section 8(a) of the FTSA provides "a person may not make or knowingly allow *a telephonic sales call* to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a) (emphasis added). While the FTSA does not define what this "automated system" is, which itself is an unconstitutional defect warranting dismissal of Count I of FAC (*see* discussion at pp. 9-10, *infra*), a "telephonic sales call" is defined as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services …" Fla. Stat. § 501.059(1)(j). On its face, therefore, whether a call violates Section 8(a) rests squarely on whether it is a "telephonic sales call" to a *consumer about consumer* (not commercial) *goods or services*—*i.e.*, one specific type of call and caller, to the exclusion of all others. For example, a call made to a Florida consumer for the purpose of collecting a debt using an "automated system" without consent—which is no longer allowed under the TCPA's "automatic telephone dialing system" restrictions after *Barr*—or an "automated" political call to a Florida consumer (among other subject matter) is perfectly legal under the FTSA on its face. Yet, a call for the purpose of selling a consumer good or service to that same person while using the same "automated system" without consent is illegal on its face. Put differently, Section 8(a) regulates a specific type of caller, subject matter and recipient—a salesperson making a sales call about consumer goods or services to a consumer—while all other types of calls can be made with an "automated system" with impunity. As in *Barr*, "that is about as content-based as it gets." 140 S.Ct. at 2346-47. Thus, this Court should rule that Section 8(a) is a content-based restriction on speech.

Moreover, "[c]ontent-based laws—those that target speech based on its communicative content [like Section 8(a) does]—are presumptively unconstitutional" and, as such, are subject to "strict scrutiny" review and "may be justified [under the First Amendment] only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163; *see also Barr*, 140 S.Ct. at 2347. In this regard, well before the recent amendments to Section 8(a), two similar state statutes were struck down by two federal courts applying strict scrutiny.

In 2015, the Fourth Circuit invalidated a South Carolina statute prohibiting "unsolicited consumer telephone calls"—the definition of which was closely analogous to the FTSA definition of "telephonic sales calls" —and political calls. *Cahaly v. Larosa,* 796 F.3d 399, 402 (4th Cir. 2015).

Applying strict scrutiny, the court struck down that part of the statute on the basis that it was not narrowly tailored and "suffers from underinclusiveness because it restricts two types of robocalls—political and consumer—but permits 'unlimited proliferation' of all other types." *Id.* at 406.

Then, in 2016, a federal district court struck down a similar Arkansas state statute prohibiting use of an autodialer to place calls offering goods or services or in connection with a political campaign. *Gresham v. Rutledge,* 198 F. Supp. 3d 965, 972-73 (E.D. Ark. 2016). Also applying strict scrutiny there, the district court held that the statute was underinclusive because "no limit [wa]s placed" on other types of calls "that also may intrude on residential privacy." *Id.* at 972. The court in *Gresham* did so despite the Attorney General's submission of evidence that she had received no consumer complaints regarding charity robocalls and few consumer complaints regarding debt collection robocalls. *Id.* at 971-72. The court reasoned that, "[i]f the interests of privacy and safety warrant restriction of automated calls made for a commercial purpose or in connection with a political campaign, they also warrant restriction of other types of automated calls." *Id.* at 972.

Additionally, in *Barr*, the amendment to the TCPA provision at issue failed strict scrutiny because the government "ha[d] not sufficiently justified the differentiation between government-debt collection speech and other important categories of robocall speech, such as political speech, charitable fundraising, issue advocacy, commercial advertising, and the like." 140 S.Ct. at 2347. The FTSA likewise fails to justify the differentiation between consumer automated "telephonic sales calls" and any other category of speech. Thus, these directly on-point authorities suggest that Section 8(a) is appropriately examined under "strict scrutiny" as a content-based restriction on speech.

> *ii. Section 8(a)'s content-based speech restrictions fails 'strict scrutiny' review.*

To survive strict scrutiny, the State must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S.Ct. 2806, 2817 (2011) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010)). The State bears the burden to show that Section 8(a)'s differentiation between "telephonic sales calls" and other types of calls furthers a compelling governmental interest and is narrowly tailored to that end. *Id.*; *Reed*, 576 U.S. at 171. The State cannot meet its heavy burden here. That is because omitted from the statute and its legislative history is either purpose or justification for limiting the application of Section 8(a) of the FTSA to "telephonic sales calls" to consumers about "consumer goods and services" made using an "automated system," as opposed to other automated calls (*e.g.*, political). Rather, the FTSA's

legislative history reflects the Florida legislature's discussion of consumer complaints about ***unwanted calls in general,*** including calls made using an autodialer to play a recorded message and spoofed calls regardless of content, as well as unwanted telemarketing calls regardless of how they are made (*e.g.,* manual calls). However, the legislative history does not articulate the reason behind specifically regulating only "telephonic sales calls" rather than ***all*** calls made using an "automated system for the selection or dialing of telephone numbers" to the exclusion of all other kinds of calls.[3]

Even assuming *arguendo* that the Florida legislature identified a specific purpose or motivation behind limiting the FTSA as it did—such as concerns about protecting "consumer" privacy, preventing "automated" calls to "consumers" generally, or just eliminating "unwanted" calls even if manual—Section 8(a) is not narrowly tailored to serve any such interest. "A statute is narrowly tailored if it targets and eliminates ***no more than the <u>exact</u> source of the 'evil' it seeks to remedy.***" *Frisby v. Shultz*, 487 U.S. 474, 485 (1988) (emphasis added) (citing *City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 808-10 (1984)). But the text of the FTSA is <u>not</u> focused on an "exact source of evil" to be remedied; instead, it is both underinclusive and overinclusive.

The Supreme Court has held that legislation that is "underinclusive" or leaves injuries to the government's purported interest unprohibited is not narrowly tailored. *Reed*, 576 U.S. at 171-72. Thus, Section 8(a) is underinclusive, and therefore not narrowly tailored, because it still permits many types of unwanted calls. For example, Section 8(a) does nothing to limit any other category of unwanted automated calls (like political calls made during election seasons) and still permits unwanted "telephonic sales calls" that are not made with an "automated system for the selection or dialing of telephone numbers." Further, unlike the analogous provision of the TCPA, which prohibits "***<u>any</u>*** call" made using an automatic telephone dialing system" (or "ATDS") other than emergency calls or with the prior express consent of the called party (47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added)), the FTSA prohibits <u>only</u> automated "telephonic sales calls," which is defined and limited to include only calls to consumers about consumer goods or services. *See* Fla. Stat. § 501.059(1)(j). Calls to consumers or businesses about non-consumer goods or services, or to businesses about consumer goods or services, utilizing the same "automated" system are permitted. In short, rather than prohibiting <u>all</u> autodialed calls on <u>all</u> topics (except for emergency calls, which are indisputably a "compelling state interest") like the TCPA, the FTSA "singles out [telephonic sales calls regarding

---

[3] *See* Florida Senate Bill Analysis and Fiscal Impact Statement for CS/SB 1120 (hereinafter "FIS") at 2, available at https://www.flsenate.gov/Session/Bill/2021/1120/Analyses/2021s01120.rc.PDF.

consumer goods or services] for differential treatment." *Reed*, 576 U.S. at 169; *see also Cahaly*, and *Gresham*, *supra* (striking down similar state statutes as underinclusive).

Finally, in addition to its silence on restrictions for many types of unwanted automated calls (which makes it <u>under</u>inclusive), if Section 8(a) was actually motivated by consumer protection from unwanted calls, it is simultaneously <u>over</u>inclusive because it unnecessarily restricts calls consumers may have actually wanted or expected. For example, a consumer could contact a business about the purchase of a consumer product and ask to be called back but not provide their "prior express written consent" within the meaning of the FTSA's definition of that term. *See* Fla. Stat. § 501.059(1)(g). Alternatively, the consumer could provide that business with their "prior express written consent" within the meaning of the ***TCPA***—which is similar to but seemingly has some different requirements than its Floridian counterpart. *See* 47 C.F.R.§ 64.1200(f)(9). The end result is that the consumer either does not receive a clearly desired call just because his or her consent did not meet the onerous requirements of the statute or the business takes the risk of possibly violating the FTSA in using an "automated system" to call the consumer. Either way, these examples all demonstrate that Section 8(a) is overinclusive and not "narrowly tailored" to achieve any compelling government interest. Thus, as Section 8(a) of the FTSA is a presumptively unconstitutional content-based restriction that does not withstand strict scrutiny, Count I should be dismissed in its entirety under Rule 12(b)(6).

*iii.   Section 8(a) also does not survive 'intermediate scrutiny' review.*

Although strict scrutiny clearly applies, Section 8(a) does not survive intermediate scrutiny review, either. Under the intermediate scrutiny standard, speech which is "neither misleading nor related to unlawful activity" may be restricted if there is (i) a "substantial" state interest, (ii) "the regulation directly advances the governmental interest asserted" and (iii) the regulation "is not more extensive than is necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980). The State also bears the burden of meeting this standard. *See FF Cosms. FL, Inc. v. City of Miami Beach,* 866 F.3d 1290, 1299 (11th Cir. 2017).

As discussed above, there is <u>nothing</u> in the FTSA's legislative history or the text of the statute itself suggesting there is <u>any</u> particular state interest, let alone a "substantial" state interest, that the recent amendments were designed to address. For the reasons stated above, even if there were some generalized interests in protecting consumers from unwanted automated calls or preserving consumer privacy, Section 8(a) is both under- and overinclusive in advancing such interests. There are a variety of "unwanted" calls not covered by Section 8(a) (*e.g.,* debt collection calls, scam calls,

non-sales calls, political calls, and non-consumer sales calls that do not fit the definition of a "telephonic sales call" that can be made in automated fashion, without consent and without recourse), and a variety of "wanted calls" that are covered when they should not be (*e.g.,* where the consumer provides consent to be contacted but not "prior express written consent" within the meaning of the FTSA). Accordingly, even if this Court applies intermediate scrutiny here (and it should not), Section 8(a) is nevertheless unconstitutional and, therefore, Count I should still be dismissed.

     b.  Section 8(a) of the FTSA is also unconstitutionally vague and violates due process.

The Fifth Amendment to the U.S. Constitution (applicable to the states vis-à-vis the Fourteenth Amendment) provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." *Johnson v. United States*, 576 U.S. 591, 595 (2015).[4] This guarantee is violated when a law is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Id.* (citation omitted). "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012).

In this regard, the FTSA prohibits telephonic sales calls made using "an automated system for the selection or dialing of telephone numbers or the playing of a recorded message[.]" Fla. Stat. § 501.059(8)(a). However, Section 8(a) does not define this critical phrase or the key words in it. Even worse, the FTSA's statutory language and legislative history have used various terms to describe the technology regulated. For example, the legislative history uses the phrases "automated machine," "automated dialer," "automatic telephone dialing system," and "autodialer" seemingly interchangeably and without consideration to possible different meanings, sometimes conflating them into a singular "technology." FIS at 1-2. Further, prior to the amendments, the FTSA used different phrases throughout, even in the same sections:

> (8)(a) No person shall make or knowingly allow a telephonic sales call to be made if such call involves an ***automated system for the selection or dialing of telephone numbers or the playing of a recorded message*** when a connection is completed to a number called.
>
> (a) Nothing herein prohibits the use of an ***automated telephone dialing system*** with live messages if the calls are made or messages given solely in response to calls initiated by the persons to whom the ***automatic calls*** or live messages are directed.

---

[4] The due process guarantees of the Fourteenth Amendment are coextensive with those of Florida's Constitution. *See, e.g.*, *Bonavista Condo. Ass'n, Inc. v. Bystrom*, 520 So. 2d 84, 86 (Fla. 3d DCA 1988) ("The due process protections afforded by the fourteenth amendment of the United States Constitution are the same as those provided by article I, section 9 of the Florida Constitution.")

Fla. Stat. § 501.059(8)(a)-(b) (2018) (emphases added); *see also The Dream Defenders v. DeSantis*, 2021 WL 4099437, at \*20 (N.D. Fla. Sept. 9, 2021) (noting that "even a commonly understood word may be rendered ambiguous by the language surrounding it").[5] As such, it is completely unclear what technology constitutes an "automated system" under Section 8(a) of the FTSA—past, present, or future.[6] Thus, it is impossible for a caller to know whether they are using equipment regulated by the FTSA and whether or not they must comply with the FTSA's applicable requirements for such calls. Instead, businesses can only guess at their peril as to what equipment is legal. Under the TCPA, businesses had to play this guessing game for years as judges throughout the country were split as to whether certain dialers constituted an ATDS for purposes of the TCPA (the Supreme Court eventually clarified what is covered). The FTSA unleashes the same uncertainty, it is open to inconsistent judicial interpretations and arbitrary enforcement, and its unmitigated existence threatens to chill protected speech. Thus, in sum, Section 8(a) is also unconstitutionally vague.

      c.   The FTSA violates the Dormant Commerce Clause.

The FTSA also violates the Dormant Commerce Clause because it impermissibly regulates commerce occurring wholly outside of Florida. "The Commerce Clause grants to Congress the power to regulate interstate and foreign commerce." *Fla. Transp. Servs., Inc. v. Miami-Dade Cty.*, 703 F.3d 1230, 1243 (11th Cir. 2012) (citing U.S. Const. art. I, § 8, cl. 3). "[T]his affirmative grant of authority to Congress also encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 326 n.1 (1989). "[A] state law that has the 'practical effect' of regulating commerce occurring wholly outside that State's borders is invalid under the Commerce Clause." *Id*. at 332. Indeed, a state's power to enact substantive legislation is limited and "[a]ny attempt 'directly' to assert extraterritorial jurisdiction over persons or property would offend sister States and exceed the inherent limits of the State's power." *Edgar v. MITE Corp.*, 457 U.S. 624, 643 (1982) (citations omitted). "Statutes that have the practical effect of controlling conduct beyond the boundaries of the state are 'invalid regardless of whether the statute's extraterritorial reach was intended by the legislature.'" *TelTech*

---

[5] Also confusing matters is that the Legislature proposed two competing amendments of Section 8(a), one that would have narrowed the "automated system" definition and the other than would have broadened it depending on the version enacted, and both of which would apply retroactively. *See* Fla. House Bill, https://www.flsenate.gov/Session/Bill/2022/1095/BillText/c1/PDF and Fla. Senate Bill, https://www.flsenate.gov/Session/Bill/2022/1095/BillText/c3/PDF.

[6] It is also telling that other state autodialing statutes provide definitions for covered technology. *See, e.g.,* N.Y. Gen. Bus. Law § 399-p(a); 815 ILCS 305/5(a); Wash. Rev. Code § 80.36.400(1)(a).

*Sys., Inc. v. McCollum*, 2009 WL 10626585, at *8 (S.D. Fla. July 16, 2009) (citing *Healy*).

*TelTech* is instructive. There, the Court found that a Florida law prohibiting persons from causing false caller ID information to be displayed to call recipients had "the practical effect of regulating commerce that occur[red] wholly outside the state of Florida" and violated the Commerce Clause because it "[wa]s impossible for [the plaintiffs] to determine whether the recipient of a call [wa]s in Florida"; therefore, "[t]he logical consequence of this impossibility [wa]s that [the plaintiffs] [we]re unable to offer Caller ID spoofing services anywhere in the country without risking criminal liability under Florida's statute." *Id.* at *8.[7] The same logic applies to the FTSA, which defines "telephone solicitor" as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, ***doing business in this state***, who makes or causes to be made a telephonic sales call." Fla. Stat. § 501.059(1)(i) (emphasis added). "Doing business in this state" includes "businesses that conduct telephonic sales calls from a location in Florida ***or from other states or nations to consumers located in Florida***." *Id.* § (1)(e) (emphasis added). There is also a rebuttable presumption "that a telephonic sales call made to any area code in this state is made to a Florida resident or to a person in this state at the time of the call." *Id*. § (8)(d).

As in *TelTech*, "the increased use of mobile phones and call forwarding" makes it impossible for callers to be certain that the party they are calling is not located in Florida. 2009 WL 10626585, at *2. For example, a business located in California might place a "telephonic sales call" using an "automated system" to a telephone number with a New York area code, but the call recipient may be located in Florida. That business would be liable for violating the FTSA even if it had no way of determining the call recipient's actual location. *Id*. at *8. Similarly, because the FTSA presumes that all calls to Florida area codes are made to Florida residents or individuals located in the state, businesses must presume that all calls to Florida area codes are subject to the FTSA even if the call recipient receives the call in another state. Consequently, the specter of liability hangs over businesses making sales calls to consumers anywhere in the country, effectively requiring those businesses to comply with the FTSA for all such calls. Indeed, Plaintiff's own FAC shows the extra-territorial reach of the FTSA, as his putative FTSA class lays this infirmity bare by purporting to include "***all persons in the United States***" (FAC ¶ 38), even though he himself has a ***Virginia area***

---

[7] *See also SpoofCard, LLC v. Burgum*, 499 F. Supp. 3d 647, 656 (D.N.D. 2020) (finding state anti-spoofing statute "effectively regulates how [p]laintiffs engage in their interstate commerce" in violation of the Commerce Clause because it was impossible to determine the recipient's location).

***code and does not reside in Florida***. In Plaintiff's view, every individual with a viable claim—regardless whether he or she is a Florida resident, was in Florida at the time of the alleged calls, or has a Florida area code—would be presumptively included in his FTSA class, which simply confirms that the FTSA is unconstitutional under the Dormant Commerce Clause. *See Booth v. Appstack, Inc.*, 2015 WL 1466247, at *14-16 (W.D. Wash. Mar. 30, 2015) (declining to certify class under Washington statute, which included all calls made to telephone numbers with Washington area codes, because "the fact that a number with a Washington State area code was dialed does not necessarily mean that the call was received in Washington State" and permitting the statute to apply to calls initiated and received outside the state "would render the [statute] unconstitutional under the dormant Commerce Clause").[8] In short, the FTSA "ha[s] the practical effect of regulating commerce that occurs wholly outside the state of Florida" in violation of the Dormant Commerce Clause. *TelTech*, 2009 WL 10626585, at *8. Count I thus is subject to dismissal on this basis, as well.

    d.  This case fails even under Judge Ruiz's recent decision in *Turizo*.

While Enhance respectfully submits that the *Turizo* decision was incorrectly decided for the reasons discussed below, the Court need not reach that issue because, even under that flawed decision, Plaintiff's FTSA claim fails. Indeed, in determining the FTSA does not violate the Dormant Commerce Clause, Judge Ruiz justified his holding in that regard on the basis that the FTSA does not regulate conduct for non-Florida residents on its face. Specifically, Judge Ruiz held:

> Defendant overstates the potential for liability under the FTSA. As a practical matter, the FTSA's area code presumption is a rebuttable one. *See* Fla. Stat. § 501.059(8)(d). Thus, by the statute's own terms, the autodialer provision does not extend to calls to non-Florida residents or persons outside the state. *See id.*

2022 WL 2919260, at *8. Here, Plaintiff concedes that he is an out-of-state resident (*see* Dkt. 1-1) with a Virginia area code (*see* Dkt. 16, ¶ 19), does <u>not</u> claim he was in Florida when he received the alleged calls, and thus is plainly outside the scope of the FTSA and lacks standing to bring that claim.

Nonetheless, Enhance respectfully submits that *Turizo* was incorrectly decided for several separate and independent reasons. **First,** Judge Ruiz found that interstate commerce was unaffected by the FTSA primarily because "[t]o avoid liability under the FTSA's autodialer provision, Defendant has at least two options: employ human means to select and dial telephone numbers, or

---

[8] The Florida legislature recognized this flaw. *See* FIS at 10 (citing *TelTech*: "It is unclear whether the bill's presumption regarding Florida area codes will have an effect on interstate commerce to an extent that has the practical effect of regulating commerce outside of Florida's borders.").

to obtain consent from the called parties before using an autodialer to contact them"—essentially stating there is no burden on interstate commerce if the law is not violated. 2022 WL 2919260, at *9. However, stating that Dormant Commerce Clause implications can be avoided if defendants merely "employ human means" to contact individuals or obtain "consent" does not address the real problem—*i.e.*, that the FTSA is far reaching and ***unduly burdensome on interstate commerce regardless of whether the law is adhered to or not***. *See Healy*, 491 U.S. at 336 (Dormant commerce clause implicated when, like here, the statute applies to "commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State."). That there is a rebuttable presumption that a person with a Florida area code is a Florida resident or is located in Florida at the time of the calls (*see Turizo*, 2022 WL 2919260, at *8 (citing Fla. Stat. § 501.059(8)(d)) is also of no moment – in fact, the FTSA and the *Turizo* court failed to consider that a person may not have a Florida area code and yet still be a Florida resident or be located in Florida at the time of the alleged calls, which indisputably affects commerce wholly outside of Florida.

**Second,** Judge Ruiz incorrectly applied the intermediate scrutiny test in *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. 557, when evaluating the constitutionality of the FTSA in that case. *See Turizo*, 2022 WL 2919260, at *10. As noted above, *Central Hudson* is inapplicable here, as the *Reed* decision (*i.e.,* strict scrutiny) applies to ***all content-based burdens on protected speech, including commercial speech***. *See Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 703 (6th Cir. 2020) ("[T]he intermediate-scrutiny standard applicable to commercial speech under *Central Hudson*...applies only to a speech regulation that is content-neutral on its face"); *see also Reed*, 135 S. Ct. at 2226 (2015) ("[A] law that is content based," which "on its face draws distinctions based on the message a speaker conveys" is "subject to strict scrutiny").[9] Moreover, the FTSA does not survive the *Central Hudson* intermediate scrutiny test in any event. Indeed, while the ***plaintiff*** in *Turizo* might have identified a ***general*** substantial government interest in protecting consumer privacy with respect to the TCPA, *see* 2022 WL 2919260, at *10, the issue is whether the ***Florida legislature*** has identified a substantial interest limiting Section 8(a) to just "telephonic sales calls" made using an "automatic system" as opposed to all automated calls, even ones the consumer may have wanted. It has not, as shown above.

**Third**, the *Turizo* decision side-steps the vagueness issue by focusing primarily on whether

---

[9] While Judge Ruiz raised the issue of whether *Reed* and *Barr* may alter the analysis of content-based commercial speech, it relied on earlier Eleventh Circuit precedent, and declined to fully address the issue. *See Turizo,* 2022 WL 2919260, at *10.

the defendant had grounds to make a facial challenge to the text of the FTSA. *See Turizo*, 2022 WL 2919260, at *11-12. However, Judge Ruiz failed to actually evaluate the FTSA's vagueness—in fact, the court merely assumed the defendant's texting system was covered by the FTSA because the **defendant** referred to it as an "automated system." *Id.* Yet, as set forth above, it is completely unclear what equipment or technology constitutes an "automated system" under Section 8(a), and it is therefore impossible for a caller to know whether they are using equipment regulated or prohibited by the FTSA. Such an unclear definition renders the statute unconstitutionally vague. Accordingly, for all of these reasons, and possibly others, this Court should not be persuaded at all by *Turizo*.

## II.   **Counts I and II Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim for Relief under the FTSA or TCPA**.

a.   The FAC fails to state a viable FTSA claim because Plaintiff is not a Florida resident.

Plaintiff's FTSA claim in Count I also fails because the at-issue calls were plainly not made to a Florida resident and, thus, it fails as a matter of law. Again, the only court to rule on this issue of whether the FTSA impacts out-of-state residents has held that "by the statute's own terms, the autodialer provision does not extend to calls to non-Florida residents or persons outside the state." *Turizo*, 2022 WL 2919260, at *8 (citing Fla. Stat. § 501.059).[10] If that is true, then because Plaintiff admits that he is an out-of-state resident, he cannot avail himself of a claim under the FTSA.

b.   The FAC fails to state a viable TCPA claim for several reasons.

Count II of the FAC seeks relief under the National DNC Registry provision in Section 227(c) of the TCPA which, along with its related implementing regulations, prohibits "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). As shown below, Plaintiff fails to plausibly allege such a claim against Enhance in this case for several reasons.

> i.   *Plaintiff fails to allege facts suggesting that his phone number is actually used for "residential" purposes as required to state a TCPA DNC claim.*

On its face, the TCPA's DNC Registry provision applies **only** to subscribers of **_residential_** numbers. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2); *see also Cunningham v. Sunshine Consulting Grp., LLC*, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *report and rec.*

---

[10] The only other decision to address the constitutionality of the FTSA to date, *Pariseau v. Built USA LLC*, 2022 WL 3139243 (M.D. Fla. Aug. 5, 2022)), did not address this issue or whether the FTSA violated the Dormant Commerce Clause and, thus, is inapposite. Moreover, *Turizo* has no impact on Plaintiff's TCPA claim which, as shown below, is also ripe for dismissal.

*adopted,* 2018 WL 5728534 (Aug. 7, 2018) ("The language of the TCPA specifically provides that the regulations implemented pursuant to … 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights.'"); *Cunningham v. Politi,* 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,* 2019 WL 2524737 (June 19, 2019) (dismissing: "The private right of action created by … § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers."). Consequently, courts have held that failure to plead facts supporting this critical element is fatal to TCPA DNC claims like Plaintiff's. *See, e.g., Hicks v. Alarm.com,* 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (dismissing DNC claim where, among other things, the plaintiff only alleged his phone was "not associated with a business and is for personal use" but not if it was used for "residential" purposes); *Cunningham v. Rapid Capital Funding, LLC/RCF,* 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017), *report and rec. adopted,* 2017 WL 3776165 (Aug. 31, 2017) ("As Plaintiff has not alleged facts showing his cell phones are used for residential purposes, he fails to state a claim….").

The *Hicks* case, which was brought by the same counsel representing Plaintiff here, is instructive on this point. In dismissing, the district court recognized that Section 227(c) protects only residential telephone subscribers; but the complaint there merely alleged that the subject cell phone number "is not associated with a business and is for personal use." *Hicks*, 2020 WL 9261758, at *5. Though that plaintiff argued that cell phones may be registered on the Registry, he failed to allege adequate factual support regarding the ***actual use*** of his phone in his pleading. *Id*.

Plaintiff's allegations regarding the purported "use" of the subject 540 phone number in this case are identical to those in *Hicks*, and they remain unchanged despite the amendments to his pleading. Indeed, Plaintiff does <u>not</u> allege that his phone is used exclusively (if at all) for "residential" purposes. Instead, he merely concludes that the subject number and phone is used "for personal purposes" and is "not associated with a business." Dkt. 16, ¶¶ 21-22. Like the court in *Hicks*, therefore, this Court should dismiss Plaintiff's DNC claim on this basis alone under Rule 12(b)(6).

ii.  *Plaintiff fails to allege that he received more than one call by or on behalf of Enhance in a 12-month period as required to bring a DNC claim.*

The TCPA is also clear that a single call cannot give rise to a claim pursuant to Section 227(c)(5), which creates a private right of action for National DNC violations for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." While the FAC does vaguely allege Plaintiff received "at least" three phone calls, *see* Dkt. 16, ¶ 25, the facts pled only suggest

15

that **one** of the calls placed was ultimately transferred to someone purportedly affiliated with Enhance in some fashion. *See id.*, ¶ 31. The FAC, therefore, only includes conclusory allegations that **one** call was made on behalf of Enhance, while the other two calls must rely on a vicarious liability theory.[11] As discussed below, however (*see* pp. 16-20, *infra*), Plaintiff has failed to allege a plausible agency theory. Thus, because the FAC only includes allegations of a single call loosely connected to Enhance but alleges no details about the other purported calls remotely connecting Enhance to them, Count II promptly fails as a matter of law and therefore should be dismissed.

> ### iii. *The FAC implies direct and vicarious liability but fails to allege sufficient facts to support a claim under either theory under the TCPA or FTSA.*

Plaintiff's claims independently fail because he does not plead sufficient facts supporting a plausible theory of liability under the TCPA or the FTSA. Courts have recognized two potential theories of liability under the TCPA: (i) direct liability; and (ii) vicarious liability. *See Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.*, 582 F.App'x 678, 679 (9th Cir. 2014)). Thus, to properly plead a telemarketing claim, "the person must either (1) ***directly make*** the call, or (2) have an ***agency relationship*** with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (emphasis added) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). As to the former, it is well accepted that direct liability under the TCPA applies <u>only</u> to persons or entities that "initiate" telemarketing calls and that to "initiate" in this context means to "physically place" a phone call. *Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)); *accord Grant v. Regal Auto. Grp., Inc.*, 2020 WL 8254283, at *7 (M.D. Fla. July 30, 2020), *report and rec. adopted*, 2020 WL 8224838 (Sept. 29, 2020). This rule applies equally to claims brought under the TCPA's DNC Registry provision, as invoked here. *See, e.g., Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 394-96 (D. Colo. 2014); *Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019). The FTSA similarly contemplates direct and vicarious liability. *See* Fla. Stat. § 501.159(8)(a) ("A person may not ***make or knowingly allow a***

---

[11] Plaintiff's FAC adds a few conclusory statements, such as the at-issue calls were "from Enhance Health," Dkt. 16, ¶ 24, and that he "informed Enhance Health" that he was not interested in the products being offered by the caller, *id.* at ¶ 29, but those allegations are mere conclusions unsubstantiated by any actual facts suggesting that Enhance actually physically made those calls.

***telephonic sales call to be made*** if such call involves an automated system….) (emphasis added).[12]

*1.   Plaintiff does not adequately allege direct liability.*

Along those lines, courts routinely dismiss direct TCPA liability claims at the pleadings stage that, like Plaintiff's, lack sufficient factual allegations demonstrating the defendant actually "initiated" the calls at issue in the sense of "***tak[ing] the steps necessary to physically place" a call***. *Sheski*, 2020 WL 2474421, at *2-4 (dismissing where the plaintiff did not allege facts supporting direct liability) (emphasis added) (quoting *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. at 6583 ¶ 26). "Merely alleging that [a defendant] 'made' or 'initiated' [a] call"—like Plaintiff does—"is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019).

Here, Plaintiff does not allege who physically placed the at-issue calls. Rather, Plaintiff merely concludes that he received calls "from" Enhance. *See* Dkt. 16, ¶ 24. In contrast to this allegation, Plaintiff implies throughout his FAC (like he did in his original Complaint) that someone other than Enhance made the calls to him, as the only indication that the call was from someone affiliated with Enhance was based on a single, ***transferred*** call. *See id.* ¶¶ 24-31. In other words, Plaintiff does not identify who placed the initial call prior to the transfer, and his unsupported speculation that "Medicare Supplemental" is a "fake company name" (*id.*, ¶ 30) does not remotely comply with federal pleadings standards. Plaintiff also does not allege, for example, that: (i) the phone number used to call him belongs to Enhance; (ii) anyone identified themselves as an employee or agent of Enhance or told him that "Medicare Supplemental" is a fake name; or (iii) the substance of the call with the sole person alleged to be affiliated with Enhance. These omissions are fatal and warrant dismissal of the FAC on liability grounds. *See, e.g.*, *Hirsch v. Lyndon S. Ins. Co.,* 2019 WL 5110622, at *6 (M.D. Fla. June 7, 2019), *report and rec. adopted sub nom.,* 2019 WL 8370863 (Aug. 6, 2019), *aff'd*, 805 F.App'x 987 (11th Cir. 2020) (dismissing where plaintiff was "attempting to impose liability on Defendants for countless calls made throughout the United States … without alleging who made the calls"); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing where plaintiff "provide[d] no details specifying how [plaintiff]

---

[12] Given the recent amendments and the newly enacted private cause of action, there is little applicable case law on the FTSA. However, "Florida courts often look to federal decisions as a guide to interpreting state statutes that are similar to federal ones." *Martinolich v. Golden Leaf Mgmt., Inc.,* 786 So. 2d 613, 615 (Fla. 3d DCA 2001) (citations omitted). This Court should apply instructive TCPA authorities to determine whether Enhance is directly or vicariously liable under the FTSA.

knew that [defendant] in fact placed these calls" and holding that "[a]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the calls" at issue) (citing *Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *10 (E.D. Va. Nov. 12, 2020)). Moreover, that one call was allegedly transferred to someone affiliated with Enhance (which is all that Plaintiff alleges here, at best) is of no moment to direct liability either, as other courts have found. *See, e.g., Landy v. Nat. Power Sources, LLC,* 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021). (dismissing, finding that mere allegations that the initial unidentified caller transferred plaintiff to defendants was insufficient to support direct TCPA liability, without more); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3-4 (D.N.M. Sept. 28, 2018) (holding that bald and conclusory allegations an "initial call was transferred to [d]efendant's in-house telemarketer" insufficient to state a direct <u>or</u> vicarious TCPA liability claim). *See also Abante Rooter,* 2018 WL 288055, at *4 (allegations that the plaintiff received a call from someone purportedly calling on behalf of the defendant and who identified defendant by name insufficient for direct liability). That is because it is not the person who ***receives*** a ***transferred*** call who physically placed the initial call.

Additionally, Plaintiff's FAC ***concedes*** that he does not know who physically placed any of the at-issue calls, as he inconsistently alleges elsewhere that unidentified third party "affiliates, agents, and/or other persons or entities" calling "on behalf" of Enhance are responsible. Dkt. 16, ¶¶ 38, 65, 67. In other words, Plaintiff baldly alleges that <u>either</u> Enhance <u>or</u> an unknown third party are at fault, which federal district courts have found to be "woefully insufficient to state a claim of ***any sort***," let alone a plausible TCPA claim. *Maldonado-Rodriguez v. Citibank, N.A*., 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added). *See also Bank v. Philips Elecs. N. Am. Corp.,* 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (allegations that the at-issue calls were "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" were "too conclusory to state a plausible claim" for direct TCPA liability). This Court should rule similarly here.

In sum, Plaintiff's conclusory allegations fall far short of satisfying federal pleading standards. Because he does <u>not</u> plausibly allege Enhance itself (not some third party) <u>physically</u> made the calls at issue, this Court should follow the weight of applicable authority cited above holding that such deficient claims should be dismissed under Rule 12(b)(6), and do so here.

### 2.   *Plaintiff fails to adequately plead vicarious liability.*

Plaintiff likewise fails to plausibly allege vicarious liability, under either the TCPA or FTSA. Vicarious liability cannot be casually pled; rather, courts uniformly require plaintiffs to meet a

certain pleading threshold. Indeed, vicarious liability in any context requires a special relationship between a principal and an agent. *See* Restatement (3d) of Agency ("Restatement") § 1.01, cmt. c ("[T]he concept of agency posits a consensual relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person."); *see also Green v. United States*, 700 F. Supp. 2d 1280, 1301 (M.D. Fla. 2010), *aff'd*, 418 F.App'x 862 (11th Cir. 2011) (applying Restatement (Third) Agency § 1.01). This requires "more than mere passive permission; it involves request, instruction, or command." *Linlor v. Five9, Inc.*, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017). And "[t]hough 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.'" *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *5 (N.D. Cal. Mar. 28, 2018) (citation omitted). Applying these well-established principles, federal courts routinely dismiss TCPA claims premised on vicarious liability at the pleadings stage where, as here, the plaintiff fails to allege sufficient facts establishing an agency relationship with or control over a purported agent. *See, e.g.*, *Hirsch*, 2019 WL 5110622, at *6 (dismissing, noting that the FCC "has explicitly rejected a theory of liability under the TCPA against the seller of a product for telephone calls marketing that product absent an agency or similar relationship between the seller and the caller"); *Abramson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) (dismissing where plaintiff's "allegations of vicarious [TCPA] liability [we]re conclusory in nature"); *Sheski*, 2020 WL 2474421, at *4 (same). This also dooms Plaintiff's FAC to dismissal.

Here, Plaintiff merely employs various legal buzzwords, without supporting facts, to vaguely suggest that third party "agents" placed some or all of the at-issue calls. *See* Dkt 16, ¶¶ 38, 65, 67. But he does not allege any ***facts*** supporting a plausible inference that Enhance directed or controlled the calling party's conduct, as is required to plead agency. *See, e.g.*, *Linlor*, 2017 WL 5885671, at *3. *See also Landy,* 2021 WL 3634162, at *3-4 (allegations initial caller transferred plaintiff to defendants insufficient to support agency theory, holding "[a]n entity cannot be held liable under the TCPA 'merely because they stand to benefit from the call'"); *Hale v. Teledoc Health, Inc.,* 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) (granting 12(b)(6) motion, holding: "[T]he inclusion of Teledoc's services in HII's insurance bundle, alone, is insufficient to permit even a circumstantial inference that HII called plaintiffs at Teledoc's direction or subject to Teledoc's control" for vicarious TCPA liability purposes.). Therefore, to the extent he was attempting to allege vicarious

liability, Plaintiff failed and his FAC should be dismissed in its entirety. *See, e.g., Abramson* and *Hirsch, supra.* And because Plaintiff's individual claims do not survive dismissal under Rule 12(b)(6) for the many reasons above, the class allegations must also be dismissed. *See, e.g., Henley v. Turner Broad. Sys., Inc.,* 267 F. Supp. 3d 1341, 1357 (N.D. Ga. 2017) (citing various cases).

*iv.  Plaintiff does not include any facts supporting trebling of damages.*

Lastly, Plaintiff vaguely suggests he is seeking treble damages (under the FTSA and TCPA) for a willful/knowing violation. *See, e.g.,* Dkt. 16, ¶¶ 61-62, 66 & Prayer. However, his allegations on this front are entirely conclusory and thus do not meet federal pleading standards, either. *See, e.g., Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019) (dismissing claim for alleged willful/knowing TCPA violations, in part, because it "consist[ed] of nothing more than bare-bones legal conclusions"). Those allegations should be dismissed at the minimum.

## III.  <u>The FAC Should Also Be Dismissed Under Rule 12(b)(1) For Lack of Federal Subject Matter Jurisdiction Because Plaintiff Lacks Article III Standing</u>.

The Court should also dismiss the entire FAC under Rule 12(b)(1) for lack of federal subject matter jurisdiction because Plaintiff fails to plead sufficient facts demonstrating the essential elements of causation and redressability for Article III standing purposes for either of his claims.

Rule 12(b)(1) provides that a complaint is properly dismissed where there is a lack of subject matter jurisdiction. *See, e.g., Cherry v. F.C.C.*, 2009 WL 4668405, at *5 (M.D. Fla. Dec. 3, 2009) (citation omitted). Article III of the U.S. Constitution confers on the federal judiciary the power to adjudicate only certain cases and controversies. To establish Article III standing, Plaintiff must plausibly allege that: (i) he suffered a concrete and particularized "injury in fact," (ii) there is a causal connection between her injury and the conduct complained of (i.e., causation or "traceability"), and (iii) his injury must be capable of being redressed by a favorable decision (i.e., "redressability"). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 125 (2014).  To meet the causation element, the "injury in fact" must be "fairly traceable" to the <u>defendant's</u> conduct. *Lexmark*, 572 U.S. at 125. *See also Lujan,* 504 U.S. at 560-61 (an injury is not fairly traceable to the defendant if the injury complained of is "th[e] result [of] the ***independent action of some third party*** not before the court") (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42 (1976) (emphasis added)). Here, Plaintiff failed to plead actual facts showing any conduct attributable to Enhance as opposed to third parties not before this court, or that Enhance had any relationship with any responsible third party. See pp. 16-20, *supra*. Thus, Plaintiff lacks Article III standing, and the FAC should be dismissed under Rule

12(b)(1). *See, e.g., Hicks*, 2020 WL 9261758, at *5 ("[b]ased on the deficiencies identified under Rule 12(b)(6), Plaintiff also fails to properly plead causation and redressability" for Article III standing); *Barker v. Sunrun Inc*., 2019 WL 1983291, at *3 (D.N.M. Apr. 29, 2019) (ruling similarly); *Freidman v. Massage Envy Franchising, LCC*, 2013 WL 3026641, at *4 (S.D. Cal. June 13, 2013).

Moreover, Plaintiff also lacks standing because has not shown his claims can be adequately redressed by Enhance. Indeed, because he pleads no facts showing any conduct attributable ***to*** Enhance as discussed above, his injury is not capable of being redressed ***by*** Enhance. In this regard, Plaintiff seeks an injunction and money damages. *See* Dkt. 16, Prayer. But enjoining Enhance from actions it is not taking cannot prevent unidentified third parties from calling him, and imposing statutory or other damages on Enhance will not prevent further unlawful conduct of any third party who may have made unsolicited calls to him. This warrants dismissal under Rule 12(b)(1).[13]

Plaintiff also lacks Article III standing to seek injunctive relief, which requires that he establish "continuing, present adverse effects" traceable to Enhance's conduct. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *see also Schaevitz v. Braman Hyundai, Inc.,* 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (dismissing request for injunctive relief in TCPA case for lack of standing where there was nothing suggesting possible future injuries). Here, Plaintiff alleges he received three calls over a four-day period ***nearly a year before filing his FAC*** (*see* Dkt. 16, ¶ 25) but does not allege any continuing or possible future injury.  Thus, he lacks standing to seek injunctive relief.

## IV.     **Alternatively, Plaintiff's Proposed Class is Facially Uncertifiable as Pleaded and, Therefore, His Class Claims Should Be Stricken under Rules 12(f) and 23**.

Plaintiff's FAC still contains the exact same class allegations that as the original Complaint. Should the Court decide not to dismiss the FAC in its entirety for the reasons above, it should nevertheless strike Plaintiff's facially-defective class allegations under Rules 12(f) and 23.

It is well settled that "[s]ometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action. *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160 (1982); *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 695 (M.D. Ga. 2012). In this regard, courts in the Eleventh Circuit and elsewhere have widely recognized that they may (and, indeed, ***should*** in appropriate cases) strike faulty class allegations at the pleadings stage under Rule 12(f) where, as here, it is apparent from the face of the complaint that the proposed classes are not

---

[13] And of course, because Plaintiff "lacks [Article III] standing to bring the asserted claims on his own behalf" against Enhance, he also "lacks standing to represent a class asserting such claims." *Atkinson v. Wal-Mart Stores, Inc.*, 2009 WL 1458020, at *4 (M.D. Fla. May 26, 2009).

certifiable under Rule 23 as pled. *See, e.g., Lawson*, 286 F.R.D. at 700-01; *Foxx v. Ocwen Loan Servicing, LLC*, 2012 WL 2048252, at \*9-10 (M.D. Fla. June 6, 2012); *see also Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (recognizing that propriety of class certification may be "readily apparent" from the face of the complaint); *MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1207 (M.D. Fla. 2010) (ruling similarly).

Courts routinely find proposed classes to be uncertifiable and strike them at the pleadings stage, in TCPA cases and others, where: (i) the proposed definitions are impermissibly "fail-safe"; (ii) common questions of law and fact do not predominate; and/or (iii) the class definition is overbroad. *See, e.g., Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at \*9 (S.D. Ohio May 7, 2014); *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at \*1-5 (C.D. Cal. Dec. 21, 2016); *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, 2018 WL 488257, at \*4 (N.D. Ill. Jan. 18, 2018); *Lindsay Transmission, LLC v. Office Depot, Inc*., 2013 WL 275568, at \*4-5 (E.D. Mo. Jan. 24, 2013). Plaintiff's proposed class definition (Dkt. 16, ¶ 38) fits neatly into these categories.

a.  Common questions of law and fact do not predominate for either putative class.

Plaintiff's proposed class would require individualized determinations on the issue of consent, among others, which demonstrates that common questions of law and fact would <u>not</u> predominate, as required by Rule 23(b)(3). To meet this requirement, common questions must "present a significant aspect of the case" and "can be resolved for all members of the class in a single adjudication." *Bacon v. Stiefel Lab'ys, Inc.*, 275 F.R.D. 681, 695 (S.D. Fla. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). "[P]redominance is lacking" where, as here, "whether the calls were consented to—a threshold issue—is not subject to generalized proof." *Newhart v. Quicken Loans Inc.*, 2016 WL 7118998, at \*2 (S.D. Fla. Oct. 12, 2016).

Thus, courts routinely deny class certification in TCPA cases on predominance grounds where individualized determinations of "consent" would be needed. *See, e.g., New Concept Dental v. Dental Res. Sys., Inc.*, 2020 WL 3303064, at \*9–10 (S.D. Fla. Mar. 3, 2020); *Newhart*, 2016 WL 7118998, at \*2; *Balthazor v. Cent. Credit Servs., Inc.*, 2012 WL 6725872, at \*4 (S.D. Fla. Dec. 27, 2012); *Tillman v. Ally Fin. Inc.*, 2017 WL 7194275, at \*7 (M.D. Fla. Sept. 29, 2017). Courts also often strike class allegations at the pleadings stage and/or grant pre-discovery motions to deny certification, in TCPA cases and in others, where individualized determinations of "consent" are needed. *See, e.g., Pepka and Lindsay, supra*; *Eldridge v. Cabela's Inc.*, 2017 WL 4364205, at \*7-11 (W.D. Ky. Sept. 29, 2017); *Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at \*4 (N.D. Ill. Feb. 1,

22

2017); *Dorfman v. Albertson's LLC*, 2020 WL 86192, at *5 (D. Idaho Jan. 7, 2020); *see also Baisden v. Credit Adjusts., Inc.*, 813 F.3d 338, 343 (6th Cir. 2016) ("[t]he context of the consent provided is ***critical***" in a TCPA case) (emphasis added). This Court should rule similarly in this case.

Here, while Plaintiff's proposed putative classes do not expressly include the word "consent," both putative classes rely on claims that fail as a matter of law if the putative class member provided his or her consent. Plaintiff's first putative class (the "Florida Telephone Solicitations Act Autodial Class") relies on a violation of a violation of Section 501.059(8)(a), but that subsection only applies "to a number called without the prior express written consent of the called party." Plaintiff's second putative class (the "Telephone Consumer Protection Act Do Not Call Registry Class") relies on a violation of the TCPA's DNC provisions, however, that provision only prohibits "***telephone solicitations***" and, in that regard, a call does <u>not</u> qualify as a "telephone solicitation" where (among other things) the plaintiff gave their "prior express invitation or permission"—*i.e.,* their ***consent***—to receive the call. 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2) & (f)(15). Moreover, given the many different unidentified third party "affiliates, agents, and/or other persons or entities" that Plaintiff suggests may have made calls "on behalf" of Enhance (Dkt. 16, ¶¶ 38, 65, 67), how those third parties may have obtained consent from consumers, how those consumers provided consent to those third parties or may have revoked consent, and whether their consent or revocation was legally sufficient can vary substantially by individual. The same would be true for persons with an "established business relationship" with the caller, which is also context-dependent, can likewise vary wildly by individual, and can also prevent calls from qualifying as "telephone solicitations" as required for a § 227(c) claim. 47 C.F.R. § 64.1200(c)(2); *see also* 47 C.F.R. § 64.1200(f)(5) (defining "established business relationship"). Therefore, whether any calls were made without the consent of the Plaintiff and the putative class members and/or constituted a "telephone solicitation" in the present case are not common questions of law or fact that can be resolved by generalized proof across the entire class in a single adjudication. Rather, they would necessitate individualized factual and legal inquires on the critical issue of consent at the minimum, among others. *See, e.g., Lindsay*, 2013 WL 275568, at *5 (granting motion to strike, holding "the absence of prior consent and the absence of a prior business relationship" are individualized issues precluding certification in a TCPA case under Rule 23). Thus, the proposed classes should be stricken.

b. Plaintiff's proposed classes are impermissibly fail-safe.

Plaintiff's proposed class definitions are also impermissibly fail-safe in violation of Rule 23

because the Court must make a determination on the merits of putative class members' individual claims to determine membership. *See, e.g., Fennell v. Navient Sols., LLC*, 2019 WL 3854815, at *3 (M.D. Fla. June 14, 2019). Specifically, a fail-safe class is one that includes only those putative class members who are entitled to relief. *Id.* Fail-safe classes are not permitted because they "shield[] the putative class members from receiving an adverse judgment" and "either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment." *Balassiano v. Fogo De Chao Churrascaria (Orlando) LLC*, 2020 WL 7365264, at *3 (M.D. Fla. Dec. 15, 2020), *report and rec. adopted*, 2021 WL 2019722 (Jan. 7, 2021) (citation omitted).

   Here, both of Plaintiff's proposed classes are impermissibly fail-safe because membership in each depends on the merits of the putative class members' underlying claims. Plaintiff's FTSA proposed class depends on whether the call at issue is a "telephonic sales call" which is a threshold liability issue. Plaintiff's proposed DNC class includes "[a]ll persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry" (*i.e.,* whether they are a "residential telephone subscriber who has registered his or her telephone number" on the DNC Registry); and (2) "who received more than one telemarketing call from or on behalf of Defendant…." (*i.e.*, whether they received a "telephone solicitation" and whether Enhance is directly or vicariously liable under the TCPA). Dkt. 16, ¶ 38. Each of these is undoubtedly a merits-based inquiry going directly to the heart of the underlying claim here, and there is no objective way to determine who is a class member as pleaded. Thus, Plaintiff's proposed classes are impermissibly fail-safe and properly stricken at the pleadings stage for this additional reason. *See, e.g., Bryant v. King's Creek Plantation, L.L.C.*, 2020 WL 6876292, at *3 (E.D. Va. June 22, 2020) (striking as fail-safe a similar DNC class).

   c. <u>Both proposed classes are impermissibly broad.</u>

   A proposed class definition is impermissibly overbroad where, as here, the class includes members to whom the defendant would not be legally liable. *See* 7A Wright & Miller, Federal Prac. & Proc. § 1760 (3d ed. 2005); *see also Walewski v. Zenimax Media, Inc.,* 502 F.App'x 857, 861 (11th Cir. 2012) (*per curiam*) (affirming denial of certification where proposed class definition "impermissibly include[d] members who ha[d] no cause of action as a matter of law"). Here, both of Plaintiff's proposed classes are impermissibly broad and therefore must be stricken.

   With regard to the FTSA proposed class, as worded, it would include individuals who: (i) provided their prior express written consent to be called; and (ii) do not reside in the state. The first category of people are expressly carved out of a Section 8(a) claim by that subsection's own

language. *See* Fla. Stat. § 501.059(8)(a) (noting the statute only applies "to a number called without the prior express written consent of the called party.")

Plaintiff's proposed DNC class is impermissibly overbroad because, as worded, it would include individuals who (i) do not use their numbers for "residential" purposes; (ii) have provided "prior express invitation or permission" (*i.e.*, consent); and/or (iii) had an established business relationship with Enhance and therefore for whom there would be no TCPA claim as a matter of law. *See* 47 C.F.R. § 64.1200(f)(15) ("The term telephone solicitation . . . does not include a call or message . . . to any person with that person's prior express invitation or permission…[or] with whom the caller has an established business relationship."); 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) (prohibiting telephone solicitations to "residential telephone subscriber[s]").

Courts routinely strike proposed class definitions and deny class certification, including in TCPA cases, on this basis. *See, e.g.*, *A Custom Heating*, 2018 WL 488257, at *4 (striking class definition as overbroad where it did not exclude those who solicited the fax at issue and therefore "ha[d] no TCPA claim against Defendants"); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 108 (N.D. Ill. 2013) (class definition overbroad where it would "include thousands of individuals who consented to receiving calls on their cellphones and thus have no grievance under the TCPA"); *see also Licari Family Chiropractic v. eClinical Works, LLC*, 2019 WL 7423551, at *3–5 (M.D. Fla. Feb. 16, 2018) (denying certification in TCPA action where proposed class did not exclude individuals who solicited the fax and thus had no claim). This Court should do so here.

Indeed, if "all of the proposed class members received only unsolicited [calls], the class definition should say so." *A Custom Heating,* 2018 WL 488257, at *4. Moreover, permitting a facially overbroad class definition to proceed would be inherently prejudicial to Enhance. "Given the 'in terrorem character of a class action,' [ ] a class defined so as to improperly include uninjured class members increases the potential liability for the defendant and induces more pressure to settle the case, regardless of the merits." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019). Thus, Plaintiff's proposed classes should be stricken on this additional basis.[14]

**V.    CONCLUSION**

For the reasons above, this Motion should be granted and the FAC dismissed in its entirety.

---

[14] With Plaintiff's proposed class definitions properly stricken, all the remaining class-related allegations (*see, e.g.,* Dkt. 16, ¶¶ 38-55) would be superfluous and thus should also be stricken. *See, e.g., Flores v. City of California City*, 2019 WL 1934016, at *6 (E.D. Cal. May 1, 2019).

DATED: August 30, 2022        Respectfully submitted,

**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: 305-374-0440

By: _s/ Yaniv Adar_
       Yaniv Adar, Esq.
       Florida Bar No. 63804
       Etan Mark, Esq.
       Florida Bar No. 720852
       yaniv@markmigdal.com
       etan@markmigdal.com
       eservice@markmigdal.com

_Counsel for Enhance Health, LLC_

## CERTIFICIATE OF SERVICE

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically on the Court's CM/ECF docket on August 30, 2022, which served same electronically upon all counsel of record.

                _s/ Yaniv Adar_
                   Yaniv Adar, Esq.
                   Florida Bar No. 63804